Hovanes Margarian, SBN 246359
hovanes@margarianlaw.com
Armen Margarian, SBN 313775
armen@margarianlaw.com
Shushanik Margarian, SBN 318617
shushanik@margarianlaw.com
THE MARGARIAN LAW FIRM
801 North Brand Boulevard, Suite 210
Glendale, California 91203
Telephone Number:    (818) 553-1000
Facsimile Number:     (818) 553-1005

Attorneys for Plaintiff,
SHUSHANIK MARGARIAN

# UNITED STATES DISTRICT COURT

## THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHUSHANIK MARGARIAN, an individual, on behalf of herself, all others similarly situated, and the general public,<br><br>        Plaintiff,<br><br>vs.<br><br>TED BAKER LIMITED, INC., a New York Corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**<br><br>1.  Violations of California's Unfair Competition Laws ("UCL"); California Business & Professions Code Sections 17200, *et seq*<br>2.  Violations of California's False Advertising Laws ("FAL"); California Business & Professions Code Sections 17500, *et seq.*<br>3.  Violations of California Consumer Legal Remedies Act ("CLRA"); Civ. Code § 1750, *et seq*<br>4.  Fraud (Intentional Misrepresentations)<br>5.  Fraudulent Concealment<br>6.  Unjust Enrichment |

///

///

///

///

///

///

///

## COMPLAINT

NOW COMES the Plaintiff, SHUSHANIK MARGARIAN ("Plaintiff" or "Margarian"), on behalf of herself, all others similarly situated, and the general public, by and through her attorneys, The Margarian Law Firm, with Plaintiff's Complaint for Damages against Defendant TED BAKER LIMITED, INC., a New York Corporation; and Does 1 through 10, inclusive.

## INTRODUCTION

1.   This action is brought against defendant TED BAKER LIMITED, INC. (referred to as "Ted Baker" or "Defendants") for their false and deceptive pricing practices in connection with their sale of "Ted Baker" clothing, accessories, and other items on their website and in their stores.

2.   Ted Baker's false and deceptive pricing practices is accomplished by advertising deeply discounted sales with products that are not actually on sale. For example, a Ted Baker advertisement will include a picture of a product with the words "Up to 50% off" under the product. The consumer is led to believe that that product is included in that sale, when in reality that is not true.

3.   It does not matter where consumers encounter these advertisements. The Federal Trade Commission (FTC) says: "whether it's on the Internet, radio, or television … in newspapers and magazines, online, in the mail, or on billboards or buses," a business' claim about its product or products cannot be misleading in any way; it must be truthful, and whenever possible, backed by scientific evidence.

4.   The California legislature and federal regulations prohibit this misleading practice. The law recognizes the reality that consumers often purchase merchandise marketed as being "on sale" purely because the proffered discount seemed too good to pass up. Accordingly, retailers, including Defendant have an incentive to lie to customers and advertise false sales. The resulting harm is tangible—the bargain hunter's expectations about the product she purchased is that it has a higher perceived value, and she may not have purchased the product but for the false savings.

5.   Under California false advertising laws, companies are prohibited from using deceptive advertising in connection with the sale or dissemination of goods. Companies are prohibited from using language that is designed to confuse or misinform consumers.

6.   Deceptive advertising can include fake sales which are when a business advertises a "sale"

that does not actually provide any discount for consumers.

7. Ted Baker has engaged in deceptive advertising as a frequent business practice, thereby misleading consumers. Ted Baker does this by tricking consumers into thinking certain products are on sale when in reality they are not.

8. Through its false and misleading marketing, advertising, and pricing scheme, Ted Baker violated and continues to violate California and federal law prohibiting misleading statements about the existence and amount of price reductions. Specifically, Ted Baker violated and continues to violate: California's Unfair Competition Law, Business & Professions Code § 17200, *et seq.,* (the "UCL"); California's False Adverting Law Business & Professions Code §§ 17500, *et seq.* (the "FAL"); the California Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA"); and the Federal Trade Commission Act ("FTCA") which prohibits unfair or deceptive acts or practices in or affecting commerce."

9. Like Section 17500 of the UCL, Section 43(a) of the Lanham Act is designed to protect both consumers as well as competitors. Section 43(a) of the Lanham Act provides, in relevant part:

"(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading representation of fact, which –

…

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or another person s goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act."

15 U.S.C. §1125(a).

10. Plaintiff brings this action on behalf of herself and other similarly situated consumers who purchased one or more of Ted Baker's deceptively priced products after viewing an advertisement for a fake sale.

11. Plaintiff seeks to halt the dissemination of this false, misleading, and deceptive pricing scheme; to correct the false and misleading perception it has created in consumer's minds; and to obtain redress for those who have purchased merchandise tainted by this deceptive pricing scheme. Plaintiff

also seeks to enjoin Ted Baker from using false and misleading misrepresentations regarding retail price comparisons in their labeling and advertising permanently. Further, Plaintiff seeks to obtain damages, restitution, and other appropriate relief in the amount by which Ted Baker was unjustly enriched as a result of its sales of merchandise offered at a false discount.

12.   Plaintiff also seeks reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the stator requirements for and award of attorneys' fees.

**JURISDICTION AND VENUE**

13.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this action arises under a federal statute. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

14.   This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,0000,000 and at least some members of the proposed Class have a different citizenship from Ted Baker.

15.   This Court has personal jurisdiction over Ted Baker because: (i) a substantial portion of the wrongdoing alleged in this Complaint took place in the State of California, (ii) Ted Baker is authorized to do business in this state, (iii) Ted Baker has sufficient minimum contacts with this state, and/or (iv) Ted Baker otherwise intentionally avails itself of the markets in this state through the promotion, marketing, and sale of its products in this state, thus rendering this Court's exercise of jurisdiction permissible under traditional notions of fair play and substantial justice.

16.   Venue is proper under 28 U.S.C. § 1391(b) because Ted Baker transacts substantial business in this District and a substantial part of the events or omissions giving rise to the claim occurred here.

**PARTIES**

17.   Plaintiff SHUSHANIK MARGARIAN is a resident of Los Angeles County, California. Plaintiff purchased the FYNLIE Knitted Dress with the Pleated Skirt (Item Number 240695) ("Knitted Dress with the Pleated Skirt"), which was marketed, sold, or otherwise delivered to Margarian by Ted Baker.

18.   Plaintiff appears in this action on behalf of herself, on behalf of all others similarly situated,

and pursuant to statutory authority provided under California Business and Professions Code §§ 17200, *et seq.* ("Unfair Competition Law") and 17500, *et seq.* ("False Advertising Law").

19.   Defendant TED BAKER LIMITED, INC. is a New York Corporation; licensed to do business and is doing business throughout the United States.

20.   Defendant operates Ted Baker retail stores and the tedbaker.com website.

21.   Ted Baker is an omni-channel specialty retailer of high-quality clothing, shoes, accessories, and home items.

22.   Currently, Ted Baker operates more than 50 retail locations throughout the United States. Ted Baker carries a variety of premium products under its own brand name.

23.   Ted Baker transacts business in Los Angeles County, California, and at all relevant times developed, promoted, marketed, distributed, and/or sold the Class Products, throughout the United States, including California. Defendant has significant contacts with the State of California by transacting business in this state.

24.   The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are unknown to the Plaintiff. The Plaintiff therefore sue those Defendants by such fictitious names. When the true names and capacities of these Defendants have been ascertained, the Plaintiff will seek leave of this Court to amend this Complaint to insert in lieu of such fictitious names the true names and capacities of the fictitiously named Defendants. The Plaintiff is informed and believes and thereon alleges that these Defendants participated in, and in some part, are responsible for, the illegal acts alleged herein. Each reference in this Complaint to Ted Baker is also a reference to all Defendants sued as DOES.

25.   Whenever reference is made in this Complaint to any act or omission of Ted Baker, such reference shall be deemed to mean that Ted Baker's officers, directors, employees, agents, and/or representatives did, ratified, or authorized such act or omission while actively engaged in the management, direction, or control of the affairs of Ted Baker, or while acting within the course and scope of their duties.

26.   Whenever reference is made in this Complaint to any act or omission of Defendants, such reference shall be deemed to mean the act or omission of each Defendant acting jointly and severally.

27.   Plaintiff is informed and believes and based thereon alleges that at all relevant times, each

Defendant was a developer, producer, distributor, and seller of Class Products; was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants; and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this complaint. Plaintiff is further informed and believes and based thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each Defendant is in some manner legally responsible for the damages by Plaintiff and the Class members.

28.   Plaintiff makes the allegations in this Complaint without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proving, or persuading, and Plaintiff reserves all of Plaintiff's rights to plead in the alternative.

**FACTUAL ALLEGATIONS**

29.   Plaintiff is informed and believes and based thereon alleges that Ted Baker is in the business of marketing and selling "Ted Baker" clothing and accessories both in its stores and on its website.

30.   Plaintiff is informed and believes and based thereon alleges that, at all times herein relevant, Defendant Ted Baker engages in a scheme to defraud its customers by deceptively advertising products sold in its store and on its website as being on sale. Ted Baker constantly advertises the merchandise by attaching sale language next to products that are not actually on sale. The sale language conveys to the customer that they will get a good deal on the specific item being used in the advertisement.

31.   However, at no time are the products ever offered for sale. The suggested sale is merely a ploy to get consumers to buy products.

32.   Defendant's business model relies on deceiving customers with fake sales. On a typical day, Ted Baker prominently displays on its landing page and on its social media some form of a sale where all products or a select grouping of products are supposedly discounted by a specific percentage—for example 40, 50, or 60% off. All or nearly all Ted Baker products on the website are represented as being discounted by the specified percentage discount from a substantially higher original or reference price.

33.   This practice is not accidental. Ted Baker deliberately and artificially includes sale language

next to products that are not actually on sale. This practice is a fraudulent scheme intended to deceive consumers into: (1) making purchases they otherwise would not have made; and/or (2) paying substantially more for merchandise consumers believed was heavily discounted and thus, worth more than its actual value.

34.   Retailers, including Ted Baker, understand that consumers are susceptible to a good bargain, and therefore, Ted Baker has a substantial interest in lying in order to generate sales.

35.   Plaintiff Margarian fell victim to Ted Baker's false advertising and deceptive pricing practices. On or about April 10, 2020, Plaintiff visited the website from her home in the State of California. Plaintiff saw on the website that Ted Baker was running a sale "Up to 50% off," which lured her to make a purchase on the website. She purchased a Knitted Dress with the Pleated Skirt from the Ted Baker website assuming that the price reflected in her cart was the sale price.

36.   Plaintiff relied on the prominently displayed fake sale. That is, Plaintiff relied on the representation that the Knitted Dress with the Pleated Skirt had in fact been offered for sale. Plaintiff thus relied on Ted Baker's representation that the Knitted Dress with the Pleated Skirt was truly on sale and being sold at a substantial markdown and discount, and thereby fell victim to the deception intended by Ted Baker.

37.   Including shipping and sales tax, Plaintiff paid $360.26 for the order. Plaintiff's order was delivered to her in the State of California.

38.   The truth, however, is that the products Plaintiff purchased were not substantially marked down or discounted. In fat, the item was not on sale at all.

39.   Defendants knew that the sale language was misleading and intentionally used it in their deceptive pricing scheme on the Ted Baker website to increase sales and profits by misleading Plaintiff and members of the putative class to believe that they are buying products at a substantial discount. Defendants thereby induce customers to buy products they never would have bought—or at the very least, to pay more for merchandise than they otherwise would have if Defendants were simply being truthful about their "sales."

40.   Therefore, Plaintiff would not have purchased the item listed above, or at a minimum, would not have paid as much as she did for the item, had Ted Baker been truthful. Plaintiff was persuaded to

make her purchase only because of the fake sale.

41.   Plaintiff's investigation confirmed that the product Margarian purchased, the Knitted Dress with the Pleated Skirt, was advertised in a way that misled consumers into believing it was on sale.  See screenshot below:



42.   The effectiveness of Ted Baker's egregiously deceitful pricing scheme is backed up by longstanding scholarly research. In the seminal article entitled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?,* 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992). Thus, "empirical studies indicate that, *as discount size increases, consumers' perceptions of value and their willingness to buy the product increase*, while their intention to search for a lower price decreased." *Id.* at 56 (emphasis added). For this reason, the Ninth Circuit in *Hinojos* held that a plaintiff making a claim of deceptive pricing strikingly similar to the claim at issue here had standing to pursue his claim against the defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is … significant to many consumers in the same way as a false product label would be." *Hinojos,* 718 F.3d at 1106.

43.   In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value . . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

44.   Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey Mullikin, "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions." Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

45.   The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990).

46.   The unmistakable inference to be drawn from this research and the Ninth Circuit's opinion in *Hinojos* is that the deceptive advertising through the use of misleading sale language employed here by Defendants is intended to, and does in fact, influence customer behavior—as it did Plaintiff's purchasing decision here—by artificially inflating customer perceptions of a given item's value and causing customers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for a product than they otherwise would have absent the deceptive advertising.

47.   Ted Baker knows that its advertising is false, deceptive, misleading, and unlawful under California and federal law.

48.   Ted Baker fraudulently concealed from and intentionally failed to disclose to Plaintiff and other members of the Class the truth about its advertised sales and deceptive pricing scheme.

49.   At all relevant times, Ted Baker has been under a duty to Plaintiff and the Class to disclose the truth about its false discounts.

50.   Plaintiff and the Class reasonably and justifiably acted and relied on the substantial price differences that Ted Baker advertised, and made purchases believing that they were receiving a substantial discount on an item of greater value than it actually was. Plaintiff, like other Class Members, was lured in, relied on, and was damaged by the deceptive pricing scheme that Ted Baker carried out.

51.   Ted Baker intentionally concealed and failed to disclose material facts regarding the truth about its deceptive pricing in order to provoke Plaintiff and the Class to purchase merchandise in its store and on its website.

### CLASS DEFINITIONS AND CLASS ALLEGATIONS

52.   This action seeks financial compensation for members of the Class in connection with the products purchased due to the false advertising by Ted Baker. Plaintiff does not seek: (i) damages for personal, bodily, or emotional injury or wrongful death; or (ii) damages for becoming subject to liability or legal proceedings by others.

53.   This action has been brought and may properly be maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23 and other applicable law by Plaintiff on behalf of themselves and a Class as defined as follows:

a.   *National Class*: The Class that Plaintiff seek to represent ("National Class") consists of all persons and entities within the United States who purchased or will purchase products from Ted Baker, on or after Defendant placed the products into the stream of commerce. Excluded from the National Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of any such person. Also excluded is any trial judge who may preside over this case.

b.   *California Subclass*: The Class that Plaintiff seek to represent ("California Subclass") consists of all persons and entities who purchased or will purchase products from Ted Baker in California, on or after the date Defendant placed the products into the stream of commerce. Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of any such person.

Also excluded is any trial judge who may preside over this case.

54.     There is a well-defined community of interest in the litigation, and the proposed class is ascertainable:

a.     *Common Questions Predominate*: Common questions of law and fact exist as to all class members and predominate over any questions that effect only individual members of the class, if there are any individual questions. The common questions of law and fact include, but are not limited to:

1)   Whether Defendants knew the advertisements regarding the sales were false;

2)   Whether Defendants violated California consumer protection statutes;

3)   Whether Defendants breached their express warranties;

4)   Whether Defendants breached their implied warranties;

5)   Whether the advertisements and statements made by Defendants were and are false and/or had and have had a tendency to deceive customers;

6)   Whether Defendants failed to adequately disclose that the sales did not include the products advertised;

7)   Whether the advertisements were deceptive;

8)   Whether the advertisements are an unlawful, unfair, and/or "fraudulent" business act or practice within the meaning of the Business and Professions Code §§ 17200 et seq.;

9)   Whether Defendants had a duty to Plaintiff and the Class to disclose that the advertisements were not reflective of the actual price of the products;

10)  Whether Defendants knew or reasonably should have known about the influence of the misrepresented prices on consumer purchasing behavior.

b.     *Typicality*: Plaintiff' claims are typical of the claims of the class members. Plaintiff and the class members sustained the same types of damages and losses.

c.     *Numerosity and Ascertainability*: The classes are so numerous, thousands of persons, that individual joinder of all class members is impractical under the circumstances. The class members are ascertainable by, among other things, sales records and by responses to methods of class notice permitted by law.

d.     *Adequacy*: Plaintiff are members of the Class and will fairly and adequately protect the

interests of the members of the class. The interests of the Plaintiff are coincident with, and not antagonistic to, those other members of the Class. Plaintiff are committed to the vigorous prosecution of this action and have retained counsel, who are competent and experienced in handling complex and class action litigation on behalf of consumers.

e. *Superiority and Substantial Benefit*: The prosecution of separate actions by individual members of the Class would create a risk of: (1) Inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and (2) Adjudication with respect to the individual members of the Class would substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests. The class action method is appropriate for the fair and efficient prosecution of this action. Individual litigation of the claims brought herein by each Class Member would produce such a multiplicity of cases that the judicial system having jurisdiction of the claims would remain congested for years. Class treatment, by contract provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the aforesaid conduct of Defendants. The certification of the Class would allow litigation of claims that, in view of the expense of the litigation may be sufficient in amount to support separate actions.

## TOLLING OF STATUTE OF LIMITATIONS

55.   Any applicable statutes of limitation have been equitably tolled by Ted Baker's affirmative acts of fraudulent concealment, suppression, and denial of the facts alleged herein.   Such acts of fraudulent concealment include, but are not limited to, intentionally covering up and refusing to publicly disclose that its advertisements were deceptive. Through such acts of fraudulent concealment, Ted Baker was able to actively conceal from the public for years the truth about the misrepresentation, thereby tolling the running of any applicable statute of limitations.

56.   Defendants are estopped from relying on any statutes of limitation because of their misrepresentation and fraudulent concealment of the true facts, as described herein, concerning the falsely referenced prices, Defendants were at all times aware of the misrepresentation in advertisements as described herein but at all times continued to sell and market various products despite this knowledge. ///

# FIRST CAUSE OF ACTION

### Violation of Unfair Competition Law ("UCL")

Business & Professions Code §§ 17200, *et seq.*

(Against All Defendants, Including Does 1 through 10)

57. Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

58. The UCL prohibits "unfair competition," which it defines as any "unlawful, unfair, or fraudulent" act or practice, as well as any "unfair, deceptive, untrue, or misleading" advertising. Cal. Bus. Prof. Code § 17200.

59. The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.

60. The UCL imposes strict liability. Plaintiff need not prove that Ted Baker intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

### "Unlawful" Prong

61. The Federal Trade Commission's Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the Federal Trade Commission, advertising schemes, similar to the ones implemented by Ted Baker, are described as deceptive practices that would violate the FTCA.

62. In addition to federal law, California law also expressly prohibits deceptive advertising and pricing schemes. California's False Advertising Law, Bus. & Prof. Code § 17501, ("FAL").

63. Defendant Ted Baker and DOES 1 through 10, and each of them, have violated (and continue to violate) the UCL by engaging in the following ***unlawful*** business acts and practices:

   a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have in violation of Civil Code Section 1770(a)(5);

b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another in violation of Civil Code Section 1770(a)(7);

c. Advertising goods or services with intent not to sell them as advertised in violation of Civil Code Section 1770(a)(9); and

d. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions as to the merchandise sold by Ted Baker, in violation of Civil Code Section 1770(a)(13).

64. As detailed in Plaintiff's Third Cause of Action below, the Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), ("CLRA"), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

65. The violation of any law constitutes an "unlawful" business practice under the UCL. As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

**"Unfair" Prong**

66. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

67. Defendant Ted Baker and DOES 1 through 10, and each of them, have violated (and continue to violate) the UCL by engaging in the following ***unfair*** business acts and practices:

a. Engaging in deceptive advertising and pricing in connection with the goods that Ted Baker sold (and continues to sell) such that California consumers (who could not have reasonably avoided such predatory schemes) are substantially injured, something that serves no benefit to consumers or competition; and

b. Engaging in deceptive advertising and pricing in connection with the goods that Ted Baker sold (and continues to sell) such that Defendants gain an unfair advantage over lawfully

competing retailers.

   c.  Engaging in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

68.  The harm to Plaintiff and Class members outweighs the utility of Ted Baker's practices. There were reasonably available alternatives to further Ted Baker's legitimate business interests other than the misleading and deceptive conduct described herein.

**"Fraudulent" Prong**

69.  A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

70.  Defendant Ted Baker and DOES 1 through 10, and each of them, have violated (and continue to violate) the UCL by engaging in the following ***fraudulent*** business acts and practices: using misrepresentations, deception, and/or concealment of material information in connection with the advertisement of goods Ted Baker sold (and continues to sell), such that California consumers and other members of the public in California are likely to be deceived. These misrepresentations played a substantial role in Plaintiff's decision to purchase those products, and Plaintiff would not have purchased those products without Ted Baker's misrepresentations.

71.  Ted Baker's practices, as set forth above, have misled Plaintiff, the proposed Class, and the public in the past and will continue to mislead in the future. Consequently, Ted Baker's practices constitute an unlawful, unfair, and fraudulent practice within the meaning of the UCL.

72.  Ted Baker's violation of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Class members and the public will be deceived into purchasing products based on such deceptive advertisements. These false advertisements created phantom markdowns and lead to financial damage for consumers like Plaintiff and the Class.

73.  Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief and order Ted Baker to cease this unfair competition, as well as disgorgement and restation to Plaintiff and the Class of all Ted Baker's revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

///

## SECOND CAUSE OF ACTION

VIOLATION OF FALSE ADVERTISING LAW ("FAL")

Business & Professions Code §§ 17500, *et seq.*

(Against All Defendants, Including Does 1 through 10)

74.   Plaintiff re-alleges and incorporates by reference as fully set forth herein, all paragraphs of Plaintiff' Complaint.

75.   The FAL prohibits unfair, deceptive, untrue, and misleading advertising in connection with the disposal of personal property (among other things), including, but not limited to, false statements as to worth, value, and former price.

76.   Section 17500 "proscribe[s] not only advertising which is false, but also advertising [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 679.

77.   Ted Baker's routine advertising which creates the illusion that certain products are on sale when in reality they are not is an unfair, untrue, and misleading practice.

78.   This deceptive marketing practice gave consumers the false impression that the products were on sale, therefore, leading to the false impression that the consumers were getting a good deal.

79.   Ted Baker misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code alleged above.

80.    The deceptive advertising and pricing scheme that is subject of this Complaint was (and continues to be) likely to deceive members of the public.

81.   As a direct and proximate result of Ted Baker's misleading and false advertisements, Plaintiff and Class members have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Ted Baker to restore this money to Plaintiff and all Class members and to enjoin Ted Baker from continuing these unfair practices in violation of the UCL in the future. Otherwise, Plaintiff, Class members, and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

///

///

### THIRD CAUSE OF ACTION

VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT ("CLRA")

California Civil Code § 1750, *et seq.*

(Against All Defendants, Including Does 1 through 10)

82.   Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

83.   This cause of action is brought pursuant to the CLRA, Cal. Civ. Code § 1750, *et seq.* Plaintiff and each member of the proposed Class are "consumers" as defined by Cal. Civ. Code § 1761(d).

84.   Ted Baker's sale of the merchandise in its retail store to Plaintiff and the Class were "transactions" within the meaning of Cal. Civ. Code § 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of Cal. Civ. Code § 1761(a).

85.   Ted Baker violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the merchandise:

    a.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have in violation of Civil Code Section 1770(a)(5);

    b.   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another in violation of Civil Code Section 1770(a)(7);

    c.   Advertising goods or services with intent not to sell them as advertised in violation of Civil Code Section 1770(a)(9); and

    d.   Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of sales and prices as to the merchandise sold by Ted Baker, in violation of Civil Code Section 1770(a)(13).

86.   Pursuant to § 1782(a) of the CLRA, on May 28, 2021, Plaintiff's counsel notified Ted Baker in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it

rectify the problems associated with the actions detailed above and give notice to all affected consumers of Ted Baker's intent to act.

**FOURTH CAUSE OF ACTION**

FRAUD (INTENTIONAL MISREPRESENTATIONS)

(Against All Defendants, Including Does 1 through 10)

87.   Plaintiff re-alleges and incorporates by reference as fully set forth herein, all paragraphs of Plaintiff' Complaint.

88.   Defendants uniformly represented to all members of the Class during the Class Period in connection with their Ted Baker clothing, accessories, and other items on their website and in store that items included in the advertisement were on sale. They make this unform representation by displaying it on all their advertisements, as well as on the website itself.

89.   Defendants' advertisements for sales are false. Among other things, Defendants' representation conveyed false information about the items Plaintiff and the Class purchased, namely that the items they purchased were on sale. The truth is that Defendants rarely, if ever, offer those products for sale.

90.   Defendants knew that their representations were false, and they made them or at the very least, they made the representations recklessly and without regard for their truth. In other words, Defendants knew that the items Plaintiff and the Class purchased had rarely, if ever, sold for a sale price despite the fact the advertisements implied such.

91.   Defendants' representations were made with the intent that Plaintiff and the Class rely on the false representations and spend money they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme. Defendants engaged in this fraud to the Plaintiff and the Class's detriment in order to increase Defendants' own sales and profits.

92.   Plaintiff and the Class reasonably relied on Defendants' representations. Absent Defendants' misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendants, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

93. As a direct and proximate result of the above, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

94. Defendants undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendants' actions constituted fraud because Defendants intended to and did deceive and injure Plaintiff and the Class. Based on the allegations above, Defendants' actions constituted malice because Defendants acted with the intent to and di cause injury to Plaintiffs and the Class, and also because Defendants' deceptive conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiff and the Class. Based on the allegations above, Defendants' actions constituted oppression because Defendants' deceptive conduct was despicable and subjected Plaintiff and the Class to cruel and unjust hardship in knowing disregard of their rights.

## FIFTH CAUSE OF ACTION

### FRAUDULENT CONCEALMENT

(Against All Defendants, Including Does 1 through 10)

95. Plaintiff re-alleges and incorporates by reference as fully set forth herein, all paragraphs of Plaintiff' Complaint.

96. Defendants uniformly disclosed some facts to Plaintiff and all members of the Class during the Class Period in connection with their clothing, accessories, and other items on their website. Namely, Defendants disclosed a sale, intended to reflect that certain items would be discounted, on their social media platforms and website.

97. Defendants, however, intentionally failed to disclose other facts, making Defendants' disclosure deceptive. Specifically, Defendants failed to disclose that Defendants did not intend for the products advertised as being on sale to actually be on sale. As a result, Defendants deceived Plaintiff and the Class into believing that they were purchasing items at a substantial markdown or discount when, in reality, the sale was not applied to the items they purchased.

98. Plaintiff and the Class did not know of the concealed facts.

99. Defendants intended to deceive Plaintiff and the Class by concealing the facts described above.

100. Had the omitted information been disclosed, Plaintiff reasonably would have behaved

differently. Among other things, Plaintiff would not have purchased the items she purchased from Defendants, or, at the very least, she would not have paid as much for the items as she ultimately did.

101.  The omitted information was material and thus, reliance is presumed on a classwide basis. The omitted information related to the price of the items sold on Defendants' website and whether Plaintiff was receiving a true and genuine substantial discount or whether, instead, Plaintiff was being deceived into buying products through a pricing scheme utilizing fake sales. A reasonable person would plainly attach importance to matters affecting pricing in determining his or her purchasing decision.

102.  As a direct and proximate result of the above, Plaintiff and the Class have been harmed and suffered damages in an amount to be proven at trial.

103.  Defendants undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendants' actions constituted fraud because Defendants intended to and did deceive and injure Plaintiff and the Class. Based on the allegations above, Defendants' actions constituted malice because Defendants acted with the intent to and di cause injury to Plaintiffs and the Class, and also because Defendants' deceptive conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiff and the Class. Based on the allegations above, Defendants' actions constituted oppression because Defendants' deceptive conduct was despicable and subjected Plaintiff and the Class to cruel and unjust hardship in knowing disregard of their rights.

## SIXTH CAUSE OF ACTION

### UNJUST ENRICHMENT

(Against All Defendants, Including Does 1 through 10)

104.  Plaintiff re-alleges and incorporates by reference as fully set forth herein, all paragraphs of Plaintiff' Complaint.

105.  Plaintiff brings this restitution claim for relief based on Defendants' unjust enrichment.

106.  Defendants actively engaged in, participated in, agreed to, aided and abetted, conspired in, and/or furthered a scheme by which they were unjustly enriched to the detriment of Plaintiff and the Class.

107.  By their wrongful acts and omissions, Defendants, and each of them, were unjustly enriched

at the expense of and to the detriment of Plaintiff and the Class and/or while plaintiff and the Class were unjustly deprived. That is, Defendants' unlawful and deceptive advertising and pricing scheme induced Plaintiff and the Class to spend money they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for items than they otherwise would have absent the deceptive advertising.

108.   On behalf of the Class, Plaintiff seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all payments, commissions, profits, benefits, and other compensation obtained by Defendants, and each of them, from their wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and all others similarly situated, and also on behalf of the general public, pray for judgment against all Defendants as follows:

A. An order certifying the class and designating Shushanik Margarian as the Class Representative and her counsel as Class Counsel;

B. Awarding Plaintiff and the proposed Class members damages;

C. Awarding restitution and disgorgement of all profits and unjust enrichment that Ted Baker obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practice described herein;

D. Ordering the Defendant immediately stop selling the Knitted Dress with the Pleated Skirt and similar items with fake sales;

E. Ordering the Defendant immediately stop advertising fake sales;

F. Ordering the Defendant identify all persons within the United States and the State of California who purchased the Knitted Dress with the Pleated Skirt and similarly falsely advertised items, who may be identified through receipts, third-party distributors, and collected data; or alternatively that Defendant create a Cy Pres account and deposit all amounts received from selling the Knitted Dress with the Pleated Skirt and similarly falsely advertised items;

G. Ordering the Defendant return all amounts deposited in such Cy Pres accounts to the persons who can provide sufficient proof of purchase of the Knitted Dress with the

Pleated Skirt or other similarly falsely advertised items;

H. Ordering the Defendant use the remaining amounts to correct further deficiencies and violations of California's consumer protection status;

I. Awarding the Plaintiff recover the costs of this action; and

J. Awarding Plaintiff be granted such other and further relief as the Court may deem to be just and proper.

## DEMAND FOR JURY TRIAL

109.   Plaintiff hereby demands a jury trial for all of the claims so triable.

Dated: July 28, 2021

THE MARGARIAN LAW FIRM
801 North Brand Boulevard, Suite 210
Glendale, California 91203


By:   ___/s/ *Hovanes Margarian*_____
Hovanes Margarian
Attorney for Plaintiff,
and all others similarly situated.

## DECLARATION OF HOVANES MARGARIAN

### PURSUANT TO CIVIL CODE § 1780(d)

I, HOVANES MARGARIAN, declare as follows:

1.     I am an attorney at law duly licensed to practice before all courts of the State of California and am the lead counsel at The Margarian Law Firm, and one of the counsel of record for Plaintiff, SHUSHANIK MARGARIAN, in the above-captioned matter. I have personal knowledge of the matters set forth below and if called upon as a witness could and would competently testify thereto.

2.     I am informed and believe that venue is proper in this court pursuant to Civil Code § 1780(d) based on the following facts:

      a.   Defendant has performed transactions at issue in this action, or has obtained financial benefit from such transactions, at all times relevant to this action, in Los Angeles, California; and

      b.   At all relevant times herein, Plaintiff MARGARIAN resided in Los Angeles County.

    WHEREFORE, I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed this 28th day of July 2021 at Glendale, California.

Dated: July 28, 2021

THE MARGARIAN LAW FIRM
801 North Brand Boulevard, Suite 210
Glendale, California 91203


By   /s/ *Hovanes Margarian*
Hovanes Margarian
Attorney for Plaintiff,
and all others similarly situated.